# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **HANK S. MULLINS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:09CV00079 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Jason Mullins and Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Adam Siry, Assistant Regional Counsel, and Allyson Jozwik, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Hank S. Mullins filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

Mullins filed for benefits in March 2007, alleging that first he became disabled on October 31, 2006, approximately six weeks after injuring his back in a workplace accident. On April 13, 2007 Mullins made amendments to his filing that noted generalized anxiety and stress. His claim was denied initially and upon reconsideration. Mullins received a hearing before an administrative law judge ("ALJ"), during which Mullins, represented by counsel, and a vocational expert testified. The ALJ denied Mullins' claim and the Social Security Administration's Appeals Council denied his Request for Reconsideration. Mullins then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and argued the issues. The case is ripe for decision.

II

Mullins was thirty-six years old when he filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010) (denoting a younger individual, possessing a high school level education or more and either unskilled or no work experience). Mullins, who graduated from high school, has worked primarily as a delivery driver and heavy equipment operator. Mullins has not worked since October 2006, approximately six weeks after sustaining a workplace injury to

his back, because the injury "got worse" and did not improve as he anticipated. (R. at 130.) Mullins stated in his initial disability report on or about March 30, 2007 that he could not work due to continuing back and leg pain. On April 13, 2007, after retaining counsel, Mullins completed a supplemental work history report that also complained that he is "afraid of hurting [his] back again" and that he "stay[s] anxious [and] stressed." (R. at 168.)

Following the workplace accident on September 11, 2006, Mullins underwent two surgeries to his back in November 2006 and in March 2007 to correct herniated L4 and L5 discs. (R. at 255-56; 330-31.) On July 13, 2007, a post-operative evaluation by Mullins' treating neurologist, Matthew W. Wood, M.D., found that Mullins had reached his maximum medical improvement with permanent physical restrictions.[1] (R. at 461.) Evaluations conducted by state-agency physicians in June and November 2007 largely confirmed Dr. Wood's findings regarding Mullins' physical limitations. (R. at 389; 488-89.)

---

[1] Dr. Wood's physical capacities evaluation indicated that Mullins could occasionally lift up to fifty pounds; frequently lift up to ten pounds; occasionally carry up to twenty-five pounds; and frequently carry up to ten pounds. (R. at 461.) Dr. Wood limited Mullins' postural activities to those requiring no more than occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders; scaffolds; or ropes. Dr. Wood noted that Mullins could use his hands for repetitive grasping, pulling/pushing, and fine manipulation. (*Id.*)

Following Mullins' first reports of stress and anxiety in April 2007 and the denial of his initial claim on June 26, 2007, Mullins reported increasing depression in a June 2007 disability report appeal form. The report stated that, at that time, Mullins had begun to "worry all the time, stay on edge" and expressed difficulties "deal[ing] with stress" and "[t]rouble sleeping." (R. at 181-84.) Mullins stated that "pain and depression" had prevented him from "get[ing] out and go[ing] anywhere" to perform daily activities. (R. at 184.) Despite these reports, Mullins did not relate any treatment or plans for future treatment for these conditions. (*See* R. at 181, 183.) He did not report taking any medications for these conditions. (*Id.*)

As of November 2007, Mullins reported further deterioration of his mental condition. He noted that his anxiety and depression had become "much more severe," and reported an inability to leave the house, an inability to enjoy past activities, a dislike of crowds, and panic attacks. (R. at 212, 215.) Again, despite these reports, Mullins did not report seeking any treatment or medication for these issues. The first record for medical treatment for Mullins mental and emotional conditions appears to be February 5, 2008. After reporting "anxiety over the bills and over not being able to get out," Mullins' physician, Matthew W. Cusano, M.D., gave him Ativan samples. (R. at 43-44; 532.)

On February 20, 2008, Mullins visited Ralph Ramsden, Ph.D., via a referral to Dr. Ramsden by Mullins' attorney. (R. at 494-500.) Dr. Ramsden found that Mullins was experiencing "moderate to severe symptoms of anxiety and depression," giving him a Global Assessment of Functioning at 45 (Serious Symptoms). (R. at 500.) Although Dr. Ramsden noted signs that Mullins "is exaggerating his report of clinical problems, particularly in the areas of affective symptoms and memory problems," Dr. Ramsden also found that Mullins provided "an honest self-description of psychological symptoms. . . associated with depressive effect." (R. at 498-99.) Dr. Ramsden's evaluation noted symptoms of anxiety and depression including "frequent instrusive worrying and occasional panic attacks," "low self-esteem, social withdrawal, feelings of worthlessness, feelings of helplessness/hopelessness, depressed mood, fatigue, and anhedonia." (*Id.*) As a result of these findings, Dr. Ramsden diagnosed Mullins with an anxiety disorder due to general medical condition and a mood disorder due to general medical condition with major depressive features. (*Id.*)

There is no evidence in the record of any follow-up care by Dr. Ramsden or any other mental health professional after this initial assessment. Likewise, Mullins' subsequent visits to his primary treating physicians Dr. Cusano and Dr. Wood do not

contain any records of further anxiety, mental conditions or symptoms, or efforts by Mullins to seek treatment for such conditions. (*See* R. at 523-31; 538; 541-43).

On January 1, 2009, almost a year after his initial evaluation, Dr. Ramsden completed a check-off form assessing Mullins' mental ability to perform work-related activities. (R. at 545-47.) The evaluation notes no limitations to Mullins' ability to understand, remember, or carry out simple instructions. (*Id*. at 545.) In the areas of judgment on simple and complex work-related decisions and understanding, Dr. Ramsden indicated moderate limitations as to Mullins' abilities. Dr. Ramsden thus found that Mullins experiences "more than . . . slight limitation[s] in [these] areas," but that he is "still able to function satisfactorily." (*Id*.) Dr. Ramsden also indicated mild limitations in Mullins' ability to interact appropriately with supervisors and moderate limitations to his ability to interact with the public, co-workers, and to respond appropriately to usual work situations and to changes in routine work setting. *Id.* Dr. Ramsden opined that these limitations could cause Mullins to be absent from more than two days of work a month. (*Id*. at 547.) It does not appear from the record that Dr. Ramsden conducted further assessments or treatment of Mullins.

After reviewing the evidence, the ALJ found that Mullins did not suffer from any impairment or combination of impairments that meets or medically equals one of the agency's listed disabilities under 20 C.F.R. pt. 404, subpt. P, app. 1 (2010). The

ALJ concluded that Mullins had the residual functional capacity to perform a significant range of light-exertion and sedentary work, subject to physical, environmental, and mental limitations. (R. at 15-16.) Finally the ALJ found that Mullins' claims of medically determinable mental impairments were "non-severe," causing only "mild" or "no" functional limitations and thus did not meet the criteria for a disability under the regulations. (*Id*.)

Mullins argues that the ALJ's decision is not supported by substantial evidence, specifically in regard to the ALJ's analysis of Mullins' mental impairments. For the reasons detailed below, I affirm the Commissioner's final decision because it was properly supported by substantial evidence.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*, at 869.

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The ALJ found that Mullins had not worked during the period of alleged disability and that he had severe impairments, but that these conditions did not meet the severity of a disability as defined in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ found that while Mullins could not physically perform his past job as a heavy equipment operator and delivery truck driver, he determined that Mullins could work in light-exertion or sedentary occupations such as a cashier or a telephone order clerk. (R. at 15.)

As to Mullins' mental infirmities, the ALJ found that his "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation" to his ability to work at one of the jobs listed by the vocational expert. (R. at 13.) Therefore, the ALJ found

those conditions to be non-severe and to fall short of the requirements for disability. (*Id.*)

On appeal, Mullins argues that the ALJ committed three reversible errors. First, Mullins asserts that the ALJ erred by failing to find that Mullins suffers from severe mental impairments. (Pl.'s Br. 4-6.) Second, Mullins argues that the ALJ failed to give full consideration to the findings of Dr. Ramsden concerning the severity of Mullins' mental impairments and their effects on his ability to work. (Pl.'s Br. 6-7.) Lastly, Mullins' asserts that the ALJ failed to give finality to a previous disability finding. (Pl.'s Br. 7-8.) I disagree with all these assertions. The record contains substantial evidence to support the ALJ's conclusions, and Mullins errs in characterizing the Commissioner's Notice of Reconsideration as a prior finding of disability meriting issue preclusion.

Mullins alleges that the ALJ erroneously stated that he never complained of mental limitations or alleged disability based on mental problems and that this determination is directly contradicted by the record. (Pl.'s Br. 5-6.) Thus, Mullins argues that the ALJ failed to recognize that evidence of a disability need only be de minimus in order to satisfy the claimant's burden of proof at step two of the evaluation process. (Pl.'s Br. 4-6.)

This argument, however, lacks merit. The ALJ proceeded through the entire five-step evaluation process and found at step five that Mullins' failed to meet his burden because substantial gainful alternative employment existed in the national economy. Because the evaluation process ceases if at any step it is determined that the claimant is not disabled, and the ALJ proceeded through step five of this evaluation, the ALJ evidently did recognize that Mullins met the de minimus showing required of a claimant at step two. Rather, the ALJ rejected Mullins' claim later in his evaluation.

Next, Mullins alleges that the ALJ should have afforded more weight to Dr. Ramsden's opinions because Dr. Ramsden "based his opinion on observations and psychological testing." (Pl.'s Br. 7.)

The ALJ has the exclusive authority to evaluate a medical opinion in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). The ALJ may give a treating physician's opinion greater weight than other evidence, but the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Contrary to Mullins' allegation, the ALJ did not completely reject Dr. Ramsden's opinions. Instead, the ALJ weighed Dr. Ramsden's conclusions and determined that his single evaluation of Mullins was "inconsistent with the record as a whole," including State agency medical opinions and Mullins' own testimony and submitted reports regarding his mental health. (R. at 13.) Additionally, the ALJ noted that even Dr. Ramsden's opinion highlighted that Mullins' depression and anxiety could be treated with oral medication, and as such, Mullins' limitations did not preclude him from performing the light and sedentary jobs cited by the vocational expert. (*Id.*) Substantial evidence, therefore, supports the ALJ's conclusion that Mullins' depression was not disabling.

Mullins also argues that the ALJ's basis for rejecting Dr. Ramsden's reports in this case, namely the ALJ's finding that Dr. Ramsden's evaluation was prepared as "part of a one-time examination arranged by counsel for the purpose of enhancing Mullins' application for benefits," was improper. (Pl.'s Br. 6.) Mullins argues that the ALJ's characterization of the circumstances surrounding the psychological evaluation of Mullins "questions the ethics" of Mullins' counsel and of Dr. Ramsden. (*Id.*)

First, Mullins' argument overstates the ALJ's assessment of Dr. Ramsden's report. As noted above, the ALJ did not wholly reject Dr. Ramsden's report, rather

he gave the report "little weight" in light of conflicting evidence in the record. (R. at 13.); *see supra*. Second, the ALJ's credibility determination is in accord with the regulations' guidance regarding the weight given to the medical conclusions of treating versus nontreating physicians.

Although a treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 416.927(d)(2) (2010), a nontreating source's opinions need not be given the same weight. *See* 20 C.F.R. § 404.1502 (2010) (defining nontreating sources as a physician, psychologist, or other acceptable medical source that does not have an "ongoing treatment relationship" with the claimant). Because Dr. Ramsden's opinion regarding Mullins' condition was based on a single evaluation made in preparation for Mullins' social security disability appeal and the report was conclusory, the ALJ was within his province to weigh those circumstances according to his judgment.[2] *See, e.g. Hess v. Astrue*, No. 1:09cv00026, 2009 U.S. Dist. LEXIS 109636, at *66-67 (W.D. Va. Nov. 24, 2009) (discounting one doctor's assessment

---

[2] To the extent that the ALJ's opinion notes his prior experiences with Mullins' counsel and Dr. Ramsden's opinions in Social Security disability cases, I agree with the plaintiff that the proper question before the ALJ concerned the facts in this individual case and not other, extraneous matters. Because the ALJ's decision here is amply supported by substantial evidence, however, no further discussion is necessary on this point.

over another based on overall credibility in the record); *Sullivan v. Astrue*, No. 09-2985, 2010 U.S. Dist. LEXIS 71211, at *18-19 (D.N.J. July 15, 2010) (affirming ALJ's dismissal of a doctor's findings based on credibility issues and emphasizing the role of the ALJ as the conclusive fact finder as to witness credibility).

Finally, Mullins argues that the ALJ failed to give finality to the previous findings of the Social Security Administration. (Pl.'s Br. 7.) Mullins argues that in the November 29, 2007 Notice of Reconsideration, his claim was denied on the grounds that his condition was not expected to remain severe enough for 12 months in a row to qualify as a disability, but that the Notice does recognize that Mullins was disabled at that time. (*Id.*) Thus, he argues, the ALJ was required to show improvements to his condition or else the issue of his disability was precluded. This argument is a mischaracterization of the Notice's findings.

Although the Notice does call Mullins' condition "severe," at no point does it define him as "disabled" for the purposes of the regulations. (R. at 79.) The ALJ need only perform a medical improvement analysis where there is "any decrease in the medical severity of [the claimant's] impairments which was present at the time of the most recent favorable medical decision that [the claimant] was disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1) (2010). Accordingly, because

no such finding of disability was ever made here, medical improvement analysis and issue preclusion do not apply.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: October 18, 2010

 /S/ JAMES P. JONES
United States District Judge